**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

**Interelate, Inc.,** **Civil No. 01-1600 (ADM/SRN)**

**Plaintiff,**

**v.** **ORDER**

**Kaplan Companies, Inc.,**

**Defendant.**

---

David R. Marshall, Esq., on behalf of Plaintiff

Daniel J. Boivin, Esq., on behalf of Defendant

---

SUSAN RICHARD NELSON, United States Magistrate Judge

The above entitled matter came before the undersigned United States Magistrate Judge on Defendant's Motion for Leave to Amend Answer and Add a Counterclaim (Doc. No. 11). This case has been referred to the undersigned for resolution of pretrial matters pursuant to 28 U.S.C. § 636 and Local Rule 72.1.

## I. BACKGROUND

The dispute between the parties surrounds an alleged Service Agreement for Interelate to extract Kaplan customer data from Kaplan's PeopleSoft operating system and integrate that data into a newly installed E.piphany EpiCenter Datamart Software system. On June 1, 2001, Kaplan Companies, Inc. (Kaplan) filed a complaint against Interelate, Inc. (Interelate) in North Carolina state court, and Interelate timely removed such case to the United States District Court for the



NOV 0 8 2002
FILED
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

Middle District of North Carolina. In the North Carolina case, Kaplan asserted various claims against Interelate in connection with the alleged agreement. On August 13, 2001, Interelate commenced the present case by filing a complaint against Kaplan in Minnesota state court, and Kaplan timely removed such case to this Court. In this case, Interelate asserts various claims based on the alleged agreement between the parties.

This Court issued a Pretrial Scheduling Order on November 28, 2001. With regard to Non-Dispositive Motions, the November 28, 2001 Order provided as follows:

> **Non-Dispositive Motions**
>
> (Non-dispositive motions may be scheduled for hearing by calling Beverly Riches, Calendar Clerk, 651-848-1200.)
>
> 1. All motions which seek to amend the pleadings or add parties must be served by February 1, 2002.
>
> 2. All other non-dispositive motions and supporting documents, including those which relate to discovery, shall be served and filed by July 15, 2002.
>
> 3. All non-dispositive motions shall be scheduled, filed and served in compliance with Local Rules 7.1, 37.1, and 37.2.

Subsequent to the November 28, 2001 order, the parties commenced various written and oral discovery. Then, on May 29, 2002, a Stipulation and Order was made providing for a limited extension of the discovery and non-dispositive motion deadlines. The Non-Dispositive Motion extension provided as follows:

> All non-dispositive motions and supporting documents including those which relate to discovery, shall be served and filed by September 15, 2002.

By this Motion Defendants seek leave of this Court to Amend its Answer and Add a Counterclaim.

## II. PARTIES' POSITIONS

Kaplan argues that its motion to amend is timely under the Stipulation and Order of May 29, 2002. Basically, Kaplan argues that the May 29, 2002, Stipulation and Order extended the deadline for filing all non-dispositive motions until September 15, 2002. Kaplan's motion to amend is a non-dispositive motion. Therefore, Kaplan argues that since it filed its motion to amend before September 15, 2002, the motion is timely under the May 29, 2002 Stipulation and Order.

Accordingly, Kaplan argues that Federal Rule of Civil Procedure 15(a)'s standard that leave to amend "shall be freely given" governs this Court's decision. Under Rule 15(a), Kaplan argues that delay alone is not enough to deny its motion, that Interelate will not be prejudiced by the proposed amendments, and that its proposed amendments are neither frivolous nor futile.

Kaplan explains that it is seeking to amend now because of information that it obtained during the deposition of former Interelate employee Kim Jones. Kaplan asserts that it had a difficult time locating Kim Jones, and that Kim Jones provided key information supporting Kaplan's misrepresentation and fraud arguments. Kaplan asserts that there is no prejudice to Interelate because the proposed amendments arise from the same transaction underlying the Complaint and Answer. Further, Kaplan argues that even if additional discovery were necessary, Interelate is not prejudiced because unlike situations where the discovery period has passed, here, discovery is on-going. Finally, Kaplan argues that Interelate is not prejudiced because Kaplan would easily be allowed the very same amendments in the North Carolina action where a Pretrial Scheduling Order has not even been issued.

Interelate responds with a very different position. Interelate argues that Kaplan's motion

to amend is untimely under the May 29, 2002, Stipulation and Order. Interelate argues that the original November 28, 2001, Pretrial Scheduling Order included separate deadlines for (1) motions which seek to amend the pleadings and (2) all other non-dispositive motions. The November 28, 2001 Order's deadline for amending the pleadings was February 1, 2002, while the Order's deadline for all other non-dispositive motions was July 15, 2002. Interelate notes that several months *after* the original February 1, 2002 deadline for amending the pleadings had passed the parties eventually agreed that more time was needed for discovery and to complete any corresponding non-dispositive motions, and, therefore, they stipulated to a limited extension of the Pretrial Scheduling Order that, among other things: "All non-dispositive motions . . . shall be served and filed by September 15, 2002." Interelate argues that the parties did not discuss or contemplate that the extension included the time period for filing motions to amend given there was a separate deadline for such motions in the original Pretrial Scheduling Order and such deadline had already passed.

Consequently, Interelate argues that since the time period for amendments in the original Pretrial Scheduling Order has passed, Kaplan's motion is untimely, and Federal Rule of Civil Procedure 16's more exacting standard, only upon a showing of good cause, governs this Court's decision to grant or deny Kaplan's motion. Interelate asserts that Kaplan has not even argued that good cause exists. Interelate argues that Kaplan's assertion that it delayed in bringing the proposed amendments because it did not have the information acquired during the deposition of Kim Jones is hardly good cause. In support of this argument, Interelate explains that each of Kaplan's proposed amendments corresponds to almost exactly the same claims that Kaplan has previously asserted in its case against Interelate in North Carolina. Thus, Interelate argues that

since Kaplan had enough information to make almost the very same claims against Interelate in the earlier filed North Carolina case, Kaplan's claim that it needed the information obtained in Kim Jones' deposition to bring its proposed amendments is without merit.

Interelate makes two additional arguments. Interelate asserts that Kaplan did not act diligently in procuring Kim Jones' testimony because Kaplan was aware of Kim Jones' direct involvement in the contract from the beginning. Finally, Interelate asserts that since Rule 15(a) does not govern Kaplan's motion to amend, whether Interelate would be prejudiced is irrelevant.

## III. DISCUSSION

### A. Timeliness of Kaplan's Motion to Amend

It is standard practice, certainly among Magistrate Judges in this District, that Pretrial Scheduling Orders provide two separate deadlines for (1) motions to amend the pleadings and add parties and (2) all other non-dispositive motions. See generally Archer Daniels Midland v. Aon Risk Serv., Inc., 187 F.R.D. 578, 580-81, 581 n.1 (D. Minn. 1999) (dealing with this exact situation and concluding that the deadline to amend pleadings was not extended and therefore a motion to amend was untimely under the original pretrial scheduling order). When structuring Pretrial Scheduling Orders, Courts establish an early deadline for amending the pleadings and adding parties, typically a much later deadline for the close of discovery, and finally a deadline for all other non-dispositive motions shortly after the close of discovery. Pretrial Scheduling Orders are structured as such for a purpose. The early deadline for amending pleadings and adding parties is necessary so that during discovery parties may be usefully informed of and confident about the claims and parties actually involved in the case. A later deadline for the close of discovery allows the parties to illuminate the merits of the claims asserted. The deadline

for other non-dispositive motions, then, allows the parties typically to bring any motions regarding discovery disputes right up to and briefly after the close of discovery. The context and purpose of the Stipulation and Order for extension in this case was no different. The entire ressertation of the reason needed for the deadline extensions in the Stipulation and Order was that Counsel did not anticipate the extra time needed for depositions because it turned out that many of the deponents lived outside of Minnesota. Therefore, counsel thought there would be delay in completing the depositions that would, in turn, delay getting information to expert witnesses and producing the accompanying expert disclosures. In addition, counsel wanted an extension to file any non-dispositive motions during and briefly after this extended discovery period in the event that disputes concerning this additional discovery did arise.

Thus, when this Court agreed to a stipulation and Amended Pretrial Scheduling Order on May 29, 2002 that extended the deadline for filing "All non-dispositive motions" until September 15, 2002, this Court was allowing an extension of the original Pretrial Scheduling Order's deadline for all non-dispositive motions, except those which seek to amend the pleadings or add parties. Counsel for both parties are learned in the procedures of this Court and familiar with the practice of providing two separate deadlines in Pretrial Scheduling Orders for non-dispositive motions in general and motions to amend the pleadings. Accordingly, this Court cannot accept any argument that the Stipulation and Order extended the time for amending the pleadings.

Moreover, had this Court or the parties considered extending the time for amending the pleadings by way of the Stipulation and Order for extension, this Court would have had to be satisfied that there was good cause to do so because at the time of the issuance of the Stipulation and Order for extension, the deadline in the original Pretrial Scheduling Order for amending the

pleadings had long passed.

Therefore, since the Stipulation and Order for extension did not contemplate extending the deadline for amending pleadings, Kaplan's Motion for Leave to Amend Answer and Add a Counterclaim is untimely as the deadline for amending the pleadings, February 1, 2002, has passed.

**B. Whether "Good Cause" Has Been Shown**

"Where, as here, the deadline for the amendment of pleadings has long since expired, the propriety of the Motion for leave to amend 'is most properly considered within the framework of Rule 16(b), Federal Rules of Civil Procedure.'" Luigino's, Inc. v. Pezrow Companies, 178 F.R.D. 523, 525 (D. Minn. 1998) (citations omitted). Although "[i]t is true that the Federal Rules are usually liberally construed to permit parties to amend pleadings" under Rule 15, "[a]s regards case management orders . . . the Federal Rules set a less forgiving standard. Federal Rule of Civil Procedure 16(b) specifies that such an order 'shall not be modified except upon a showing of good cause and by leave of the district judge' [or by a magistrate judge]. Thus, a moving party must first make the requisite showing. *Even then* the district court retains discretion as to whether to grant the motion. As a vehicle designed to streamline the flow of litigation through our crowded dockets, we do not take case management orders lightly, and will enforce them." Bradford v. DANA Corp., 249 F.3d 807, 809 (8th Cir. 2001) (emphasis added) (citing In re Milk Prods. Antitrust Litig., 195 F.3d 430, 437 (8th Cir. 1999)). "The primary measure of Rule 16's 'good cause' standard is the moving party's diligence in attempting to meet the case management order's requirements." Bradford, 249 F.3d at 809 (citing Johnson v. Mammoth Recreations, Inc.,

975 F.2d 604 (9th Cir. 1992)). In addition, "the existence or degree of prejudice to the party opposing the modification might supply additional reasons to deny a motion." Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 609 (9th Cir. 1992); accord Bradford, 249 F.3d at 809. However, "[i]f that party was not diligent, the inquiry should end." Johnson, 975 F.2d at 609.

Here, with one exception, Kaplan has failed to show good cause as to why this Court should allow its proposed amendments. Although Kaplan devotes much of its memorandum to explaining why Interelate will not be prejudiced by Kaplan's amendment, this Court will construe its arguments as attempting to explain why there is good cause. Kaplan's only legitimate reason for delay in attempting to amend its pleadings is that it was unable to expeditiously procure the deposition of Kim Jones because she had left employment at Interelate and changed addresses. Kaplan asserts that the information obtained in the Kim Jones deposition supplied the necessary facts for Kaplan to assert its proposed amendments to its pleadings. (Def.'s Mem. in Sup. Mot. for Leave to Amd. at 14).

**1. Proposed Counterclaims**

Kaplan's proposed amendments add three counterclaims: count one is for fraud, count two is for breach of contract, and count three is for a declaratory judgment declaring that the Service Agreement signed by the parties is null and void.

Kaplan was not diligent in asserting the counterclaims. As Interelate points out, these counterclaims are almost the exact same claims Kaplan, as the plaintiff, has made against Interelate in the North Carolina case that was commenced prior to the present case. Indeed, the affidavit of Daniel Boivin, counsel for Kaplan, explains that the proposed counterclaims "of

fraud, breach of contract, and an alternative declaratory judgment that the Service Agreement is void for a failure of the meeting of the minds of the parties are all contained in the North Carolina action in which Interelate is the defendant." (Boivin Aff. ¶ 31). Thus, this Court agrees with Interelate that in filing its fraud, breach of contract, and declaratory judgment claims against Interelate in the North Carolina action, Kaplan must have been satisfied that it possessed sufficient information to make such claim under North Carolina Rule of Civil Procedure 11. N.C. R. CIV. P. 11 ("The signature of an attorney or party constitutes a certificate by him that he has read the pleading, motion, or other paper; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact . . . ."). Therefore, Kaplan's argument that it did not have the necessary information to assert the proposed counterclaims until after deposing Kim Jones is without merit. Kaplan apparently had sufficient information all along to assert its counterclaims, demonstrated by the fact that it asserted the same claims in a previous action, and Kaplan's failure to diligently bring those claims in compliance with the deadline for amending pleadings, bars it from bringing those claims now. See, e.g., Northern States Power Co. v. Federal Transit Admin., 2002 WL 459065, at *1 (D. Minn. March 19 , 2002) (denying late motion to amend where movant was aware of facts giving rise to the claim).

**2. Proposed Additional Affirmative Defenses**

Kaplan's proposed amendments add three new affirmative defenses: (1) Interelate's claim is barred by reason of its own breach of contract; (2) the termination fee under the alleged contract is a penalty and unenforceable; and (3) Interelate fraudulently induced Kaplan to enter into the Service Agreement. Kaplan also proposes to add factual information particularizing its existing misrepresentation affirmative defense.

As noted above, new information was not required for Kaplan to assert any claim or defense related to a breach of contract. Thus, Kaplan's failure to assert breach of contract as an affirmative defense until now can not be excused, and Kaplan has really made no argument supporting a good cause showing. See Philip v. Ford Motor Co., 2001 WL 670834, at *2 (D. Minn. June 13, 2001) (denying motion to amend the complaint where the plaintiff "has not offered any explanation for his unseemly delay").

This Court agrees with Interelate that Kaplan's failure to assert that the termination fee is a penalty as an affirmative defense is inexcusable because Kaplan had all the necessary information from the beginning of this dispute to assert such a defense. Kaplan has always had a copy of the Service Agreement that contains the remedy or alleged penalty provision. Kaplan has not advanced any reason for its failure to assert this defense earlier. Accordingly, good cause has not been shown. Id. (denying motion to amend the complaint where the plaintiff "has not offered any explanation for his unseemly delay").

Similar to Kaplan's counterclaim for fraud, Kaplan was not diligent in bringing its affirmative defense of fraudulent inducement. As the elements for fraud and fraudulent inducement are the same, see W. Contracting Corp. v. Dow Chem. Co., 664 F.2d 1097, 1100-01 (8th Cir. 1981) (judging a fraudulent inducement claim under elements of fraud); Hanson v. Ford Motor Co., 278 F.2d 586, 591 (8th Cir. 1960) (listing the elements for fraud), Kaplan had all the necessary information to bring its fraudulent inducement defense when it initially filed its answer. For instance, in its Complaint for Declaratory Judgment and Other Relief in the North Carolina action, Kaplan recited the following facts:

> [P]laintiff discovered that the representations made to it, and on which it had

> relied in entering into Exhibit A [the Service Agreement] with respect to the ability of defendant to extract and integrate the data from the PeopleSoft system into the Epiphany system, and to run and utilize the system without significant down time on a weekly basis, were false and untrue.

(Kaplan Companies, Inc.'s Compl., Civ. No. 01-8147, ¶ 7).

Therefore, it appears that Kaplan had sufficient information to assert this affirmative defense at the time it filed its answer in this case. Accordingly, Kaplan's failure to diligently include the defense within the deadline for amending the pleadings can not be excused.

With regard to Kaplan's proposed amendment adding facts to particularize its existing misrepresentation affirmative defense, Kaplan appears to have at least attempted to be diligent in procuring the new facts. Kaplan argues the new facts come from the deposition of Kim Jones, and Kaplan did have difficulties in taking the deposition of Kim Jones. Kaplan twice sent notice to Kim Jones for the taking of her deposition, but she did not appear. After successfully taking depositions of other Interelate employees in Atlanta, Georgia, in May of 2002, counsel for Kaplan actually drove out to Kim Jones' last know address, but they were still unable to locate her. Finally, Kaplan located Kim Jones in Marietta, Georgia, in June of 2002 and took her deposition in July of 2002. On the other hand, Interelate points out that Kaplan did not even serve a notice for Kim Jones' deposition until March 6, 2002 which was a month after the deadline for amending pleadings had expired. In addition, Interelate argues that Kaplan was told in October of 2001 in Interelate's Initial Disclosures that Kim Jones had knowledge of the negotiation of the contract. Thus, whether Kaplan has made the requisite showing of good cause to amend its pleadings to add these facts is a close call.

Although this Court has reservations about doing so, it will give Kaplan the benefit of the

doubt and conclude that Kaplan's difficulty in procuring Kim Jones' deposition represents good cause as to why Kaplan did not include these particular facts earlier. The Stipulation and Order for extension explains that "numerous out-of-town depositions and scheduling difficulties . . . [were] not anticipated at the time of scheduling." This statement by the parties tends to bolster Kaplan's good faith showing in that Kaplan was trying all along to secure information but unforeseen problems arose. Thus, Kaplan marginally has shown that it acted with diligence in trying to secure the facts which it proposes to add to its pleadings.[1] The fact that Kaplan has shown good cause to amend its pleadings and add facts to an existing defense does not, however, in any way affect this Court's holding that Kaplan had sufficient other facts to *assert* its other proposed affirmative defenses and counterclaims.

In conclusion, Kaplan has failed to show good cause, with the exception noted, as to why this Court should allow a modification of the deadlines established for amending the pleadings for two reasons: (1) the proposed claims were asserted in a prior action between the parties, and (2) Kaplan had the information necessary to assert the proposed claims and defenses at the time it filed its Answer.

---

[1] This Court is aware that some of the facts being added to Kaplan's misrepresentation affirmative defense (Kaplan's Amended Answer ¶9(a)–(i)) were likely already known to Kaplan without the aid of Kim Jones' deposition testimony, but this Court will not endeavor to parse through each fact.

**THEREFORE, IT IS HEREBY ORDERED that:**

1. Defendant's Motion for Leave to Amend Answer and Add a Counterclaim (Doc. No. 11) is **DENIED** in part and **GRANTED** in part. Defendant is only allowed to amend its pleadings to include the additions contained in paragraph nine (9) of the proposed Amended Answer, providing for the addition of certain facts contained in paragraphs 9(a) through 9(i).

Dated: November 8, 2002

Susan Richard Nelson
SUSAN RICHARD NELSON
United States Magistrate Judge